**BEFORE THE UNITED STATES JUDICIAL
PANEL ON MULTIDISTRICT LITIGATION**

MDL No. 2779

In re FieldTurf Artificial Turf Marketing and
Sales Practices Litigation

**PLAINTIFF THE PAW, INC.'S RESPONSE IN SUPPORT
OF CONSOLIDATION AND TRANSFER OF RELATED ACTIONS TO
THE DISTRICT OF MINNESOTA**

On January 27, 2017, Plaintiff The Paw, Inc. ("Plaintiff" or "The Paw") filed a Class Action Complaint against FieldTurfUSA, FieldTurf, Inc., and FieldTurfTarkett SAS (collectively, "FieldTurf" or "Defendants") in the District of Minnesota. The Paw alleged, among other things, that Defendants knowingly made false claims about the durability and quality of their DuraSpine turf products. Plaintiff's complaint against Defendants is one of six similar actions currently pending in federal districts throughout the United States: three cases filed on the East Coast in the District of New Jersey, two cases filed on the West Coast in the Eastern and Central Districts of California, and The Paw's complaint filed in the Midwest in the District of Minnesota. Defendants moved to consolidate all six complaints, and any subsequently filed and related action, pursuant to 28 U.S.C. § 1407.

The Paw agrees these cases involve "one or more common questions of fact" and that centralization of these cases will serve "the convenience of [the] parties and witnesses and will promote the just and efficient conduct of [the] actions." 28 U.S.C. § 1407(a). The Paw requests this Panel to consolidate these actions in the District of Minnesota, the most geographically convenient and accessible district to litigate this case. When no district has a greater geographical nexus to the case or parties than another, as is the case here, this Panel often

consolidates the pending cases in the most geographically accessible district. *See, e.g.*, *In re Flouroquinolone Prod. Liab. Litig.*, 122 F. Supp. 3d. 1378, 1381 (J.P.M.L. 2015). Here, the filed actions are already dispersed across the United States and potential plaintiffs exist in practically every state. Defendants do not reside in or even near any of the Districts in which relevant litigation is pending against them. The District of Minnesota uniquely offers a centralized location easily accessible to all parties. Therefore, The Paw requests that this Panel consolidate these cases in the District of Minnesota before Chief Judge John R. Tunheim, an experienced judge capable of efficiently resolving this complex nationwide litigation.

## ARGUMENT

**I.      The Paw Agrees that Consolidation and Transfer of All Related Actions Pursuant to 28 U.S.C. § 1407 Is Appropriate.**

In this case, all plaintiffs have alleged similar experiences with Defendants' DuraSpine products that were inconsistent with Defendants' claims of durability and quality. Several media reports have made similar allegations about Defendants and DuraSpine. In this case, The Paw brought claims against Defendants, alleging they knowingly made false and misleading claims about DuraSpine field turf. *See* Pls. Compl. at ¶¶ 40, 46-53, 56-57 (attached as Ex. 3 to Defs.' Mem. of Law in Supp. of Mot. to Transfer (Dkt. 1 ("Defs.' Mem."))). The Paw purchased and installed a DuraSpine turf field at its business location in Mankato, Minnesota after Defendants' sales representatives made claims about DuraSpine's longevity, including that the field would outlast its warranty. *Id.* at ¶ 11, 56-58. When the turf began failing only months after installation, Defendants and their agents declined to inform plaintiffs of DuraSpine's known defects. *Id.* at ¶ 64-67. Instead, Defendants – who knew of the defects in the product – denied the extent of the issues, blamed any existing issues on improper maintenance, and induced

Plaintiff to purchase additional products and services to "maintain" the turf field, none of which could capably reverse the defects of the product.  *Id.*

The Paw's experience with Defendants and their DuraSpine product is echoed by the other plaintiffs, The Borough of Carteret, the School District of the City of Newark, Gentile, Santa Ynez Valley Union High School District, Lake Tahoe Unified School District, and the County of Hudson in New Jersey.  *See The Borough of Carteret v. FieldTurfUSA Inc.*, No. 16-cv-9252 (D.N.J. Dec. 14, 2016); *Gentile v. FieldTurfUSA Inc.*, No. 17-cv-0173 (D.N.J. Jan. 10, 2017); *Santa Ynez Valley Union High Sch. Dist. v. FieldTurfUSA, Inc.*, No. 17-cv-1214 (C.D. Cal. Feb. 15, 2017); *Lake Tahoe Unified Sch. Dist. v. FieldTurfUSA, Inc.*, No. 17-cv-0191 (E.D. Cal. Feb. 23, 2017); and *Hudson v. FieldTurfUSA, Inc.*, No. 17-cv-01628 (D.N.J. Mar. 10, 2017).

Plaintiffs' complaints are supported by news reports similarly indicating the defective nature of the DuraSpine products and Defendants' knowledge of those defects.  For example, the *Voice of San Diego* published a four-part series on November 11, 2016 exploring the widespread issues with DuraSpine in the San Diego area and Defendants resistance to adhering to its warranties.  *See* Ashly McGlone, *Across the County, Taxpayer-Funded Turf Fields Are Falling Apart After Just a Few Years*, Voice of San Diego (Nov. 11, 2016).  Likewise, the New Jersey *Star-Ledger* subsequently published a three-part series asserting that Defendants knew of DuraSpine's defects as early as 2006, yet continued to falsely represent DuraSpine's durability and quality.  *See* Christopher Baxter & Matthew Stanmyre, *The 100-Yard Deception*, Star-Ledger (Dec. 4, 2016), http://fieldturf.nj.com/.

 "Centralization under Section 1407" is appropriate when doing so would "eliminate duplicative discovery, prevent inconsistent pretrial rulings and conserve the resources of the parties, their counsel and the judiciary." *In re Yasmin and Yaz (Drospirenone) Marketing, Sales*

*Practices and Prod. Liab. Litig.*, 655 F. Supp. 2d. 1343, 1344 (J.M.P.L. 2009).  Here, all plaintiffs have alleged the same deficiencies and defects in the same products marketed by the same Defendants.  In litigation, Plaintiffs will all share the same objective of confirming those allegations through fundamentally similar discovery. To that end, consolidation will prevent duplicative discovery requests and facilitate a speedier resolution of this case.

## II.    The District of Minnesota Is the Appropriate MDL Transferee District.

As Defendants assert and The Paw agrees, "no particular district has any superior claim based on the facts of this case[.]  Defendants are located in three different countries, and the plaintiff-specific facts will arise wherever the sale took place."  Defs.' Mem. at 14.

Plaintiffs have filed Complaints against Defendants throughout the United States: on the West Coast in California, on the East Coast in New Jersey, and in the Midwest in Minnesota.  Defendants are not located in any of the states where complaints were filed.  Rather, FieldTurfUSA is incorporated in Florida and operates its principle place of business in the United States in Georgia; FieldTurf, Inc. and FieldTurfTarkett SAS are located in Quebec and France, respectively.

In similar circumstances, where no particular state was the "epicenter" of injury, this Panel has highlighted several favorable attributes of the District of Minnesota when consolidating cases there: (1) Minnesota is a major metropolitan court; (2) it is centrally located; (3) it is not overtaxed with other multidistrict dockets; and, (4) it possesses the necessary resources, facilities and technology to sure-handedly devote the substantial time and effort to pretrial matters that a complex docket is likely to require.  *In re Baycol Prods. Liab. Litig.*, 180 F. Supp. 2d 1378, 1380 (J.P.M.L. 2001); s*ee also In re Nat'l Hockey League Players' Concussion Injury Litig.*, 49 F. Supp. 3d 1350 (J.P.M.L. 2014); *In re Stryker Rejuvenate and*

*ABG II Hip Implant Prod. Liab. Litig.*, 949 F. Supp. 2d 1378 (J.P.M.L. 2013).  As this Panel decided in *In re Baycol* and in many other circumstances, the District of Minnesota offers is a highly accessible, convenient, and competent district to consolidate MDL proceedings.

### A.   The District of Minnesota Offers the Most-Convenient Forum Because It Is the Most Geographically Accessible District.

The quintessential purpose of consolidation under § 1407 is to centralize similar actions "for the convenience of parties and witnesses and [to] promote the just and efficient conduct of such actions."   28 U.S.C. § 1407(a).   One of the chief considerations in determining the transferee district is its location: geographically central districts are preferred for nationwide classes.  *See, e.g.*, *In re Flouroquinolone,* 122 F. Supp. 3d. at 1381 ("The District of Minnesota is an appropriate transferee district for this litigation . . . [because] it provides a geographically central and convenient forum for this nationwide litigation."); *In re Baycol*,  180 F. Supp. 2d at 1380 (selecting the District of Minnesota as the appropriate forum because of "the geographic dispersal of current and anticipated constituent actions and the wide array already of suggested transferee districts."); *In re Subway Footlong Sandwich Marketing and Sales Practice Litig.*, 949 F. Supp. 2d 1369, 1370 (J.P.M.L. 2013) (choosing a district because it "provides a geographically central forum for this nationwide litigation, and will be convenient and accessible for all parties and witnesses."); *In re Yasmin*, 655 F. Supp. 2d at 1344 ("This district also provides a geographically central forum for this nationwide litigation in which actions are pending in various districts across the country."); *In re Wells Fargo Wage and Hour Employment Prac. Litig.*, 804 F. Supp. 2d 1382, 1384-85 (J.P.M.L. 2011) ("This district is geographically centrally located and accessible for parties and witnesses located throughout the United States.").

In this case, the six pending actions are already dispersed throughout the United States, including four class action complaints seeking to represent a nationwide class.  Three actions are

currently pending in the District of New Jersey, two additional actions are pending in the Eastern and Central Districts of California, and one action is pending in the District of Minnesota. Both California and New Jersey are located at the Coasts, and thus, consolidating cases there is sure to inconvenience plaintiffs and counsel residing at the opposite end of the United States. Minnesota, however, is uniquely located centrally and offers an accessible district to all current parties.

The District of Minnesota is also accommodating to potential future plaintiffs. DuraSpine turf fields were installed in over 1,400 locations across the United States and thus, potential plaintiffs and transactions reside in almost every state. In fact, according to the *Star Ledger*'s report, Defendants installed DuraSpine turf in nearly 45 states and Washington, D.C. *See Find Potentially Faulty Artificial Turf Fields In Your Neighborhood*, NJ.com (last visited Mar. 13, 2017), http://www.nj.com/news/index.ssf/2016/12/duraspine_fields_in_the_us-.html.

In fact, impacted victims filed other cases throughout the country against FieldTurf alleging similar issues with DuraSpine's durability. *See Allegheny Coll. v. FieldTurfUSA, Inc.*, 1:14-cv-00265 (W.D. Pa. Oct. 21, 2014) (Pennsylvania plaintiff); *Winslow Unified Sch. Dist. No. 1 v. FieldTurfUSA, Inc.*, 3:14-cv-08073 (D. Ariz. May 6, 2014) (Arizona plaintiff); *Arlington Indep. Sch. Dist. v. FieldTurfUSA, Inc.,* 348-272471-14 (Dist. Ct. Tex. June 6, 2014) (Texas plaintiff); *Indep. Sch. Dist. v. FieldTurfUSA, Inc.*, 1216-cv-26847 (Mo. 16th Jud. Dist. Oct. 16, 2012) (Missouri Plaintiff); and, *Nw. Local Sch. Dist. Bd. of Educ. v. FieldTurfUSA, Inc.* A-1205907 (C.P. Hamilton July, 14, 2012) (Ohio plaintiff).

Defendants have indicated that they anticipate additional actions may be filed. *See* Defs.' Mem. at 1. Given the geographical distribution of current and potential plaintiffs throughout practically the entire United States, the central location of the District of Minnesota can better

accommodate this litigation than can the District of New Jersey, located at one end of the United States.  This is particularly true where, as here, no district has a superior geographical nexus to the factual or legal allegations.

For similar reasons, potential witnesses would also benefit from the centralized location. Part of the plaintiffs' accusations pertain to Defendant's sales representatives' false claims of DuraSpine's quality and durability, omissions of material information about potential defects, and dilatory tactics to avoid warranty obligations.  FieldTurf's sales representatives are located throughout the country, including: Pennsylvania, Ohio, Georgia, Iowa, Connecticut, Washington, D.C., Illinois, New Jersey, Colorado, Utah, Washington, California, Oregon, North Carolina, New York, Florida, and Missouri. *Find A Representative*, Fieldturf.com (last visited, Mar. 13, 2017), http://www.fieldturf.com/en/resources/find-a-representative.

Finally, other relevant agents of the Defendants are dispersed throughout the United States.  For example, The Paw's DuraSpine field was installed by a FieldTurf agent, Midwest FieldTurf, which is located in Iowa and operates throughout the Midwest.  The Paw had extensive contact with Midwest FieldTurf about the quality of the DuraSpine turf and the available options to improve the deteriorating fibers.  Similar agents of Defendants exist throughout the United States, including: EasyTurf, Inc., located in San Diego; LandTek Group, Inc., located in New York; Chenango Contracting, Inc., located in New York; and, FieldTurf of Nevada, located in Nevada.  *See Find a Representative,* Fieldturf.com (last visited, Mar. 21, 2017), http://www.fieldturf.com/en/resources/find-a-representative#usa.

While Defendants prefer New Jersey, they are not inconvenienced by litigation in the District of Minnesota.  None of the Defendants are located in or even near to New Jersey.  They are located in Montreal, France, Georgia, and Florida.  The centralized location of the District of

Minnesota is a benefit, rather than a detriment for Defendants and the efficient resolution of pre-trial litigation.

> **B.     The District of Minnesota Has the Resources and Expertise Necessary to Efficiently Resolve Pre-Trial Issues in the Consolidated Cases.**

The District of Minnesota is certainly capable of hosting consolidated class action proceedings.   Indeed, this Panel has often consolidated class action pre-trial proceedings pursuant to § 1407 in the District of Minnesota.  *See In re Baycol*, 180 F. Supp. 2d at 1380 (choosing the District of Minnesota because it is "a major metropolitan court that i) is centrally located, ii) is not currently overtaxed with other multidistrict dockets, and iii) possesses the necessary resources, facilities, and technology."); *see also In re Target Corp. Customer Data Security Breach Litig.*, 11 F. Supp. 3d 1338 (J.P.M.L. 2014); *In re Nat'l Hockey League Players' Concussion Injury Litig.*, 49 F. Supp. 3d 1350 (J.P.M.L. 2014); *In re Stryker Rejuvenate and ABG II Hip Implant Prod. Liab. Litig.*, 949 F. Supp. 2d 1378 (J.P.M.L. 2013); *In re Fluoroquinolone*, 122 F. Supp. 3d at 1381; *In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, 542 F. Supp. 2d 1365, 1365-66 (J.P.M.L. 2008); *In re Nat'l Arbitration Forum Antitrust Litig.*, 682 F. Supp. 2d 1343, 1345-56 (J.P.M.L. 2010).

The District of Minnesota offers two metropolitan cities, Minneapolis and St. Paul, with sufficient resources to host plaintiffs, attorneys, and witnesses relevant to this case.  The District also hosts an international airport, the Minneapolis-St. Paul International Airport, where two airline hubs reside: Delta Air Lines and Sun Country Airlines.

Additionally, The Paw's action is currently pending before Chief Judge John R. Tunheim.  Judge Tunheim is experienced in efficiently resolving consolidated MDL cases. Indeed, this Panel has consolidated MDL proceedings before Judge Tunheim in the past. *See In re Fluoroquinolone*, 122 F. Supp. 3d at 1381 ("In our view, Judge Tunheim's experience in

overseeing MDL No. 1943 will benefit the parties and facilitate the just and efficient conduct of this litigation."); *see e.g.*, *In re Levaquin Prod. Liab. Litig*, 560 F. Supp. 2d 1384 (J.P.M.L. 2008)(consolidating fifteen cases to Judge R. Tunheim in the District of Minnesota over the District of New Jersey because "[t]hese fifteen actions pending . . . [are] scattered . . . [and] centralization will ensure streamlined resolution of this litigation.").

### C.   The District of New Jersey Does Not Offer the Convenience Offered by the District of Minnesota.

Defendants propose the District of New Jersey as their preferred transferee court for consolidation. Defendants provides the following justifications: (1) three pending actions were filed in New Jersey; (2) the New Jersey cases are further in the proceedings than any other pending action; (3) the pending actions used information from the *Star-Ledger*, a New Jersey newspaper; and, (4) Judge Salas is an experienced Judge. However, not all of these facts weigh significantly in favor of the District of New Jersey.

First, three of the pending actions were, in fact, filed in New Jersey by New Jersey Plaintiffs. New Jersey is a natural home for those plaintiffs. New Jersey is not, however, easily accessible by the two plaintiffs who filed actions across the country in California, or for other potential claimants in the West. With respect to geographical convenience, the District of Minnesota is far more convenient for all plaintiffs, and potential plaintiffs, than the District of New Jersey.

Second, Defendants highlight the advanced proceedings in the District of New Jersey. This is by design. Defendants have proposed a limited stay of all proceedings pending a decision by this Panel, a common procedural step when consolidation is sought. *See, e.g., Packer v. Power Balance, LLC*, No. 11-802, 2011 WL 1099001, at * 1 (D.N.J. Mar. 22, 2011)("[s]tays of a civil action are common when the issues of transfer is before the JPML."); *Ritchi Capital Mgmt.*,

87 F. Supp. 2d 463, 471-72 (S.D.N.Y. 2015)(staying proceedings while a motion to consolidate proceedings was pending before the JPML).  Although two plaintiffs have voluntarily agreed to stay the case—Gentile, a plaintiff in New Jersey, and The Paw, the plaintiff in Minnesota—the Carteret/Newark plaintiffs have refused to stay proceedings and instead have pursued advancement of their docket.  But that does not mean any New Jersey actions are actually more advanced than other litigation pending throughout the United States.

If certain actions were genuinely and substantially more developed than others, for example if they were filed long before subsequent tagalong cases, it might give rise to an argument that consolidation is appropriate where those actions are venued.  However, that is not this case here.  The Paw filed its action in January 2017, and all of the currently pending actions were filed between December 2016 and March 2017, with Defendants filing this present petition on March 1, 2017.  Any attempt to artificially advance a particular action to aid an argument before this panel should not be credited.  *See e.g.*, *In re CVS Caremark Corp. Wage and Hour Emp't Litig.*, 684 F. Supp. 2d 1377, 1379 (J.P.M.L. 2010) (actions filed immediately before § 1407 motion appeared to  "suggest[] the possibility of other considerations at play" and "where a Section 1407 motion appears intended to further the interests of particular counsel more than those of the statute, we would certainly find less favor with it."); *In re Bandywine Commc'n Tech., LLC, Patent Litigation*, 959 F. Supp. 2d 1377, 1379 (J.P.M.L. 2013) (holding that although "the Panel's primary purpose is not to divine the motives and strategies of the various litigants . . . where a Section 1407 motion appears intended to further the interests of particular counsel more than those of the statue, we would certainly find less favor with it."); *In re Louisiana-Pacific Corp. Trimboard Siding Marketing, Sales Practices, and Prod. Liab. Litig*, 867 F. Supp. 2d 1346, 1347 (J.P.M.L. 2012) ("These circumstances raise the concern that the

request to centralize in E.D. North Carolina . . . is based on considerations not entirely consistent with the purposes of Section 1407."). Even so, an advanced action in one district does not trump the geographical convenience of another. *See In re Operation of Missouri River System Litig.*, 277 F. Supp. 2d. 1378 (J.P.M.L. 2003)(centralizing in the District of Minnesota where no action was pending because "given the distribution of the parties and actions in this docket, the Minnesota forum is an accessible and geographically convenient district  equipped with the resources that this complex docket is likely to require.")

The Paw's action in the District of Minnesota is not materially behind the other filed actions in its proceedings. Service of all three Defendants has been achieved in The Paw action. The Paw is prepared to pursue its litigation and full discovery, but voluntarily stayed proceedings pending this Panel's decision in the interests of the efficiency sought by § 1407. Moreover, although other actions may have sought to advance discovery proceedings on their own, Plaintiffs and Defendants will benefit from consolidating those efforts to prevent duplicative effect. Again, for the reasons stated herein, pursuing discovery and full pretrial prosecution of these matters in the District of Minnesota offers greater efficiency and access for all of the parties, rather than only some of the parties.

Third, Defendants raise the relationship between the pending actions and the *Star-Ledger* investigation. The *Star-Ledger* and *N.J. Advance Media* released a three-part series indicating Defendants knew of the defects in their DuraSpine product but failed to inform customers and continued to make exaggerated and false claims about DuraSpine's quality and durability. Defendants assert that "[t]he complaints are all based on a December 4, 2016, article in the *Star-Ledger* of Newark." Defs.' Mem. at 1. Although the *Star-Ledger*'s investigation is mentioned in each Plaintiffs' complaint, it does not automatically establish the District of New Jersey as a

11

more convenient and accessible forum for consolidated proceedings. The article does not establish that any of Defendants' allegedly unlawful actions were performed in New Jersey to any greater extent than any other region in the United States. To the contrary, the article indicates that Defendants' primary, central decision making was done in Canada, and that it affected purchasers in New Jersey the same way it affected the purchasers in nearly 45 other States and the District of Columbia. *See Find Potentially Faulty Artificial Turf Fields In Your Neighborhood*, NJ.com (last visited Mar. 13, 2017), http://www.nj.com/news/index.ssf/20-16/12/duraspine_fields_in_the_us-.html (showing defective field purchases in 45 states throughout the US). Any decision making outside of Canada likely originated in FieldTurfUSA's headquarters in Georgia.

Also, the *Star-Ledger* is not the only, nor was it even the first, news outlet to highlight the issues of DuraSpine and Defendants' false representations. The *Voice of San Diego* published its four part story nearly a month before the *Star-Ledger*. The *Voice of San Diego* made many of the same allegations as the *Star-Ledger*, for example:

   a.  FieldTurf's DuraSpine product was failing well before the warranty period in many locations in San Diego;

   b.  FieldTurf knowingly sold defective turf that failed years before the eight-year warranty ran out;

   c.  FieldTurf failed to inform buyers about the defects in its DuraSpine product; and,

   d.  Buyers were induced to purchase FieldTurf because of Defendants' inflated claims of quality and durability.

*See* Ashly McGlone, *Across the County, Taxpayer-Funded Turf Fields Are Falling Apart After Just a Few Years*, Voice of San Diego (Nov. 11, 2016). Further, the *Topeka Capital-Journal* published an article on September 10, 2016 reporting that "[i]n Kansas and across the country, fields . . . which cost schools several hundred thousand dollars to install[] have degraded earlier

than expected." *See* Celia Llopis-Jepsen, *Buyer Beware: Failing Fields Leave Schools in Kansas and Elsewhere in a Bind*, CJonline.com (Sep. 10, 2016), http://cjonline.com/news-education-local/2016-09-10/buyer-beware-failing-fields-leave-schools-kansas-and-elsewhere-bind.      On March 31, 2016, a Tennessee-based paper made similar accusations that "fields made and sold by FieldTurf failed to reach their guaranteed life expectancy, and that FieldTurf ha[d] failed to honor warranties."   Alex Green, *Schools Say FieldTurf Knowingly Sold Them Bad Calhoun-Made Products*, Times Free Press (Mar. 31, 2016), http://www.timesfreepress.com/news/business/aroundregion/story/20-16/mar/31/artificial-turf-fields-made-calhoun-center-fe/357979/.  *See also* Sara Zendehnam, *Two School Districts, College Prep Take Legal Action Over Faulty Artificial Turf*, Fox40.com (August 25, 2016), http://fox40.com/2016/08/25/two-school-districts-college-prep-school-take-legal-action-over-faulty-artificial-turf/  (Sacramento, California news article reporting same); Bob Segall, *Artificial Turf Problems Prompt Lawsuits and Early Replacements*, WTHR.com  (Aug.  18,  2016),  http://www.wthr.com/article/artificial-turf-problems-prompt-lawsuits-and-early-replacements (Bloomington, Indiana news article reporting same).  These articles make clear that this litigation is not New Jersey-centric in terms of where relevant documents and witnesses lie, or in terms of where litigants reside.  Rather, these articles demonstrate the nationwide scope of this litigation.

The District of New Jersey is a capable and experienced district, and Judge Salas is without question a capable judge who has handled complex litigation in the past.  Nevertheless, consolidation in the District of Minnesota offers a more accessible and convenient district given the circumstances of the factual and legal allegations, the location of current and potential plaintiffs, and the potential witnesses.

## <u>CONCLUSION</u>

Given the nationwide distribution of current plaintiffs, defendants, potential plaintiffs, witnesses, and other relevant parties, centralization in a conveniently located district will best serve the goals of § 1407.  The District of Minnesota is the only current venue that offers a centralized and accessible location convenient for all parties.   In addition, the District of Minnesota is located in St. Paul and Minneapolis, a major metropolitan area with sufficient resources to host relevant parties as they pursue this nationwide complex litigation.   Finally, Chief Judge Tunheim is both capable and experienced in managing complex cases to an efficient resolution.   For these reasons, Plaintiff The Paw respectfully requests that this Panel consolidate these proceedings in the District of Minnesota.

Dated: March 23, 2017

s/ Brian C. Gudmundson
Brian C. Gudmundson (MN Bar No. 0336695)
Bryce D. Riddle (MN Bar No. 0398019)
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0844
brian.gudmundson@zimmreed.com
bryce.riddle@zimmreed.com